OF THE STATE OF ARKANSAS. **619**

TERM, 1859.]                Dobbins et al. vs. Oswalt ex.

DOBBINS ET AL. VS. OSWALT, EX.

The material questions of law, reserved at the trial in this case, arise upon the same marriage contract that was before this Court in *Oswalt ex. vs. Moore,* 19 *Ark* 260, and its validity and efficiency to exclude the marital rights of the husband, and preserve to the wife a separate right to the property owned by her at the time of their marriage, re-affirmed.

Whilst the right of argument, on the trial of a cause in the Circuit Court, is not to be denied to counsel, the regulation of the length of time to be occupied in discussion, and the determination of the legitimate questions for argument, must necessarily be left to the sound legal discretion of the presiding judge.

*Appeal from Phillips Circuit Court.*

Hon. GEORGE W. BEAZLEY, Circuit Judge

FOWLER & STILLWELL, for the appellants.

ALEXANDER and GARLAND, for appellee.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

This was an action of replevin, in the *cepit* and *detinet*, brought by William T. Oswalt, executor of Levisa Dobbins, deceased, in the Phillips Circuit Court, against Wilson D. Dobbins and Archibald S. Dobbins, for the recovery of certain articles of household furniture, farming implements, cattle, horses, mules, a number of slaves, etc., etc.

The defendants pleaded *ne unques executor, non cepit, non detinet,* and *property in themselves,* severally; issues to the pleas were submitted to a jury, verdict and judgment for the plaintiff, and appeal by the defendants on questions of law reserved during the trial.

On the trial, the appellee was permitted by the Court, against the objection of the appellants, to read in evidence the following *ante nuptial* contract, entered into by his testatrix and the appellant, Wilson D. Dobbins:

" Whereas, a marriage is intended shortly to be had and solemnized between Wilson D. Dobbins, of the county of Jackson, in the State of Arkansas, and Levisa Pillow, of the county of Phillips, and State aforesaid: and, whereas, the said parties are desirous to keep and retain to themselves certain rights and privileges, which they could not enjoy and possess without a reservation thereof, under and by virtue of a contract for that purpose entered into and made in conformity to the statute, in such cases made and provided: Therefore these presents witnesseth that the said parties do agree to and with each other that notwithstanding their contemplated marriage shall hereafter take place and be solemnized, that the joint property of the two shall be used and controlled by them mutually, during the time they may continue to live and cohabit together as husband and wife; and it is furthermore agreed by and between them, that, in prospect of death, the said *Levisa* hereby reserves to herself the right, power and privilege of disposing of any or all of her property, which she may then own, by will, or devise, to such person or persons that she may choose, without the advice or consent of the said Wilson D.: and that, in case the marriage hereby contemplated to be entered into by and between the said parties, should be dissolved, otherwise than by death of the parties, that then, and in that case, the property of each shall be returned to the one who may have brought the same with marriage: and it is agreed, by and between the parties hereto, that the annual proceeds of the mutual property of the parties to this contract shall be applied, first, during their cohabitation, to their mutual support, and the rest and residue thereof shall and may be applied, during that time, to such objects and uses as the said Wilson D. may desire or wish."

Which contract was signed and sealed by the parties 31st

January, 1853, and attested by two witnesses. On the 3d of February of the same year, its execution was proven before the recorder of Phillips county, by one of the subscribing witnesses, and on the next day it was filed for registration, etc.

It was also proven, that at the time of the marriage, which occurred shortly after the contract, Mrs. Dobbins was possessed of the property in controversy, which remained upon the place where she resided, and to which Wilson D. Dobbins removed, until after her death.

The appellee was also permitted to read in evidence, against the objection of appellants, an authenticated copy of the will of Mrs. Dobbins, executed 23d March, 1855, and admitted to probate 20th October following, by which she devised all of her separate real and personal property to her grand children, appointing the appellee her executor, and referring to the marriage contract as empowering her to make a will, etc.

Before the death of Mrs. Dobbins, her husband, the appellant Wilson D. Dobbins, conveyed to his brother, the appellant Archibald S. Dobbins, most of the property in controversy, the latter purchasing with actual notice of the marriage contract, and that the property conveyed to him belonged to Mrs. Dobbins at the time of the marriage with his brother. The property, however remained in the possession of Wilson D. Dobbins until it was replevied in this suit. It was not proved upon the trial that he had any other right to it than that acquired by his marriage with Mrs. Dobbins.

The material questions of law reserved at the trial, arising upon the admission of evidence, and the instructions given and refused by the Court, to the jury, have relation to the validity of the marriage contract, and its efficacy to exclude the marital rights of the husband, and preserve to Mrs. Dobbins a separate right to the property owned by her at the time of the marriage, etc.

The same marriage contract was before this Court in *Oswalt vs. Moore*, 19 *Ark. R.* 260, where the Court said:

" To this ante-nuptial agreement, the husband himself was a

party.   When this is the case, the rigid and severe rules which require the express and emphatic negation of the marital rights of the husband, in order to constitute a sole and separate estate in the wife, necessary when the husband is not a party to the instrument of settlement, are not applicable; but it will be sufficient ' whenever it appears, either from the nature of the transaction, as in the instance where the husband is a party to a settlement in contemplation of marriage, or from the whole context of the instrument limiting to the wife the property, that she was intended to have it to her sole use, that intention will be carried into effect by a court of equity.' "

'  . Then, after commenting upon the provisions of the contract, the Court further said:

" Under such circumstances we cannot doubt but that it was the intention of the contracting parties, that Mrs. Dobbins should remain the sole and separate owner of the property carried by her into the marriage, subject to the mutual use provided for, and to the use of its annual proceeds, otherwise provided for; and consequently, that she could charge it in equity, during coverture, as her sole and separate property, precisely as she might have done at law had she been a *feme sole*, and by contract, created a joint or partnership property with Dobbins, in such as she and he might have owned under like circumstances."

The validity of the marriage contract was, also, in effect, recognized in *Davis vs. Oswalt Ex.*, 18 *Ark.* 414.

The contract was not only executed, proven and recorded in accordance with the statute in relation to marriage contracts, but, as above stated, the appellant, Archibald S. Dobbins, purchased the property belonging to the wife, of the husband, with actual notice of the contract.   *Gould's Dig.*, *ch.* 110, *sec.* 1, 2, 5.

By virtue of the contract, Mrs. Dobbins was legally capable of making a will disposing of her separate property.   *Gould's Dig.*, *chap.* 180, *sec.* 3.

Her executor was entitled to the possession of the property, and if taken or detained from him by the appellants, he had

the right to recover it by replevin. *Cox et al. vs. Morrow*, 13 *Ark.* 603.

On the trial, the Court, against the objection of the appellants, permitted the appellee to prove that a portion of the property in controversy had been sold, after it had been replevied, under deeds of trust and decrees with which it was encumbered before the institution of the suit.

The object of this proof was to protect the appellee against a judgment for the return of the property sold under the prior liens, or its value, should he fail in the action.

At the instance of the appellee, and against the objection of the appellant, the Court also gave the jury several instructions upon this feature of the case.

But inasmuch as the appellee did not fail in the action, it becomes unnecessary to determine whether he would have been responsible for a return, or the value of that portion of the property of which he was so deprived after it was replevied, or not.

The bill of exceptions also shows that after the evidence had been closed on both sides, the counsel for the appellant moved to exclude from the jury the marriage contract, and the will of Mrs. Dobbins, and insisted that the Court should hear argument on the motion, which the Court declined to do.

It also appears from the bill of exceptions, that the counsel for the appellants moved the Court to give fifteen instructions to the jury, and insisted upon making an argument to the Court in support of the legal propositions embraced in them, which the Court declined to hear.

It appears from the transcript of the record, that the trial was commenced on the first, and continued until the 5th of June. It appears, also, that at the time the marriage contract and the will were offered in evidence, the counsel for appellants objected to their admission, and that the objection was overruled *after argument of counsel, etc.*

As above stated, the validity of the marriage contract, etc.,

was the principal legal question involved in the cause, and in the instructions moved by the parties.

What portion of the five days occupied in the trial was consumed in the discussion of this question, and others incidental to, or growing out of it, does not appear from the record.

Whilst the right of argument is not to be denied to counsel, the regulation of the length of time to be occupied in discussion, and the determination of the legitimate questions for argument must necessarily be left to the sound legal discretion and discrimination of the presiding judge. Otherwise, the entire term of a Circuit Court, continuing in most of the counties for one week, might be taken up in the trial of one cause, to the exclusion of others, and the delay of justice.

Whether the discretion exercised by the presiding judge in the regulation of the argument is the subject of review by this Court, need not be determined, as there is no showing that it was abused to the prejudice of the appellants in this case.

Finding no error in the record for which the judgment should be reversed, it must be affirmed.

Mr. Justice RECTOR, absent.